**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

—————————————————— x

ROBERT CATALANELLO,    :
             :
   Plaintiff,     :
             :  Civil Action No. 12-7904 (CCC/JAD)
  - v -       :
             :  **ORAL ARGUMENT REQUESTED**
ZACHARY A. KRAMER;    :
THE WASHINGTON UNIVERSITY SCHOOL :
OF LAW; and WESTERN NEW ENGLAND :
SCHOOL OF LAW,     :  **MOTION DAY: APRIL 1, 2013**
             :
   Defendants.    :

—————————————————— x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
THE WASHINGTON UNIVERSITY'S MOTION TO DISMISS THE COMPLAINT**

Robert D. Balin
Laura R. Handman (*pro hac vice*)
Alison B. Schary (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1633 Broadway – 27th Floor
New York, New York  10019
Telephone: (212) 489-8230
Facsimile: (212) 489-8340

*Attorneys for Defendant
The Washington University*

**TABLE OF CONTENT**

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL BACKGROUND ................................................................................... 3

ARGUMENT ........................................................................................................... 6

I.     NEW JERSEY LAW APPLIES TO ALL COUNTS AGAINST WASHINGTON
UNIVERSITY ............................................................................................... 6

II.    STANDARD OF REVIEW ......................................................................... 10

III.   PLAINTIFF FAILS TO STATE A CLAIM FOR DEFAMATION ................ 10

       A.    Statements Referencing Allegations in the *Pacifico* Complaint
are Absolutely Protected by the Fair Report Privilege ......................... 13

       B.    Statements Presenting Professor Kramer's Analysis of the Case
are Non-Actionable Opinion ................................................................. 17

       C.    Plaintiff Has Failed to Sufficiently Allege the Requisite Level
of Fault ................................................................................................. 23

IV.   PLAINTIFF FAILS TO STATE CLAIMS FOR INVASION OF PRIVACY ........ 27

       A.    Plaintiff's False Light Claim Fails for the Same Reasons as His
Defamation Claim ................................................................................ 27

       B.    Plaintiff Cannot State a Claim for Publication of Private Facts
Where the Facts in Question Are Disclosed In Public Records .......... 29

CONCLUSION .................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)......................................................................................... passim

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)..................................................................................10, 25, 26, 28

*Bose Corp. v. Consumers Union of United States, Inc.,*
  466 U.S. 485 (1984)..................................................................................................27

*Braun v. Flynt,*
  726 F.2d 245 (5th Cir.) ............................................................................................29

*Chaiken v. VV Publ'g Corp.,*
  119 F.3d 1018 (2d Cir. 1997)....................................................................................27

*Cibenko v. Worth Publishers, Inc.,*
  510 F. Supp. 761 (D.N.J. 1981) ............................................................................9, 28

*City of Pittsburgh v. West Penn Power Co.,*
  147 F.3d 256 (3d Cir. 1998)........................................................................................3

*Cox Broad. Corp. v. Cohn,*
  420 U.S. 469 (1975)..................................................................................................30

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,*
  472 U.S. 749 (1985)..................................................................................................23

*Echols v. Pelullo,*
  377 F.3d 272 (3d Cir. 2004)........................................................................................6

*Edelman v. Croonquist,*
  No. 09-1938, 2010 WL 1816180 (D.N.J. May 4, 2010)....................................18, 22

*Egiazaryan v. Zalmayev,*
  No. 11 Civ. 2670, 2011 WL 6097136 (S.D.N.Y. Dec. 6, 2011) ..............................26

*Freyd v. Whitfield,*
  972 F. Supp. 940 (D. Md. 1997) ...............................................................................17

*Fuqua Homes, Inc. v. Beattie,*
  388 F.3d 618 (8th Cir. 2004) ......................................................................................9

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974)........................................................................................8, 18

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP*,
  615 F.3d 159 (3d Cir. 2010)...............................................................................10

*Hanks v. Wavy Broad., LLC*,
  No. 11 Civ. 439, 2012 WL 405065 (E.D. Va. Feb. 8, 2012) .................................25

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657 (1989)...........................................................................................25

*Haynes v. Alfred Knopf, Inc.*,
  8 F.3d 1222 (7th Cir. 1993) ...............................................................................20

*Hustler Magazine, Inc. v. Falwell*,
  485 U.S. 46 (1988).............................................................................................18

*In re Burlington Coat Factory Secs. Litig.*,
  114 F.3d 1410 (3d Cir. 1997).............................................................................27

*Jovanovic v. Northrop Grumman Corp.*,
  Civ. No. 05-4487 (DMC), 2010 WL 1644690 (D.N.J. Apr. 22, 2010) ................12

*Lavin v. New York News, Inc.*,
  757 F.2d 1416 (3d Cir. 1985)..............................................................................15

*Levin v. McPhee*,
  119 F.3d 189 (2d Cir. 1997)...............................................................................22

*Machleder v. Diaz*,
  801 F.2d 46 (2d Cir. 1986)............................................................................28, 29

*Marcone v. Penthouse Int'l Magazine for Men*,
  754 F.2d 1072 (3d Cir. 1985)..............................................................................10

*Mayfield v. NASCAR, Inc.*,
  674 F.3d 369 (4th Cir. 2012) ..............................................................................25

*McDowell v. Paiewonsky*,
  769 F.2d 942 (3d Cir. 1985)..................................................................................8

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990)...............................................................................................18

*Moldea v. New York Times Co.*,
  22 F.3d 310 (D.C. Cir. 1994)........................................................................21, 22

*Nanavati v. Burdette Tomlin Mem. Hosp.*,
    857 F.2d 96 (3d Cir. 1988).............................................................................19, 22

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964)......................................................................................8, 18

*Newton v. NBC*,
    930 F.2d 662 (9th Cir. 1990) ............................................................................25

*Ony, Inc. v. Cornerstone Therapeutics, Inc.*,
    No. 11-CV-1027S, 2012 WL 1835671 (W.D.N.Y. May 18, 2012).......................17

*Orenstein v. Figel*,
    677 F. Supp. 2d 706 (S.D.N.Y. 2009)...............................................................26

*Partington v. Bugliosi*,
    56 F.3d 1147 (9th Cir. 1995) ............................................................................21

*Prager v. American Broad. Cos.*,
    569 F. Supp. 1229 (D.N.J. 1983) ........................................................................9

*Price v. Viking Penguin, Inc.*,
    881 F.2d 1426 (8th Cir. 1989) ..........................................................................21

*Riley v. Harr*,
    292 F.3d 282 (1st Cir. 2002)........................................................................21, 28

*Schatz v. Republican State Leadership Comm'n*,
    669 F.3d 50 (1st Cir. 2012)...............................................................................25

*Schiavone Constr. Co. v. Time, Inc.*,
    619 F. Supp. 684 (D.N.J. 1985) ........................................................................11

*Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*,
    181 F.3d 410 (3d Cir. 1999).................................................................................3

*St. Amant v. Thompson*,
    390 U.S. 727 (1968).........................................................................................25

*Sweezy v. New Hampshire*,
    354 U.S. 234 (1957).........................................................................................18

*Time, Inc. v. Hill*,
    385 U.S. 374 (1967).........................................................................................11

*Tucker v. Fischbein*,
    237 F.3d 275 (3d Cir. 2001)..............................................................................25

iv

*Underwager v. Salter*,
22 F.3d 730 (7th Cir. 1994) ....................................................................................2

*Virgil v. Sports Illustrated*,
424 F. Supp. 1286 (S.D. Cal. 1979)........................................................................29

*Washington Post Co. v. Keogh*,
365 F.2d 965 (D.C. Cir. 1966) ................................................................................11

*Yourman v. People's Sec. Life Ins. Co.*,
992 F. Supp. 696 (D.N.J. 1998) ..............................................................................21

**STATE CASES**

*Arrington v. New York Times Co.*,
434 N.E.2d 1319 (N.Y. 1982)..................................................................................29

*Bock v. Plainfield Courier-News*,
132 A.2d 523 (N.J. Super. Ct. App. Div. 1957)......................................................23

*Cornett v. Johnson & Johnson*,
48 A.3d 1041 ..............................................................................................................7

*Costello v. Ocean County Observer*,
136 N.J. 594 (1994) ................................................................................................13

*Darakjian v. Hanna*,
840 A.2d 959 (N.J. Super Ct. App. Div. 2004) ................................................11, 26

*DeAngelis v. Hill*,
847 A.2d 1261 (N.J. 2004)........................................................................................7

*Durando v. Nutley Sun*,
37 A.3d 449 (N.J. 2012)..............................................................................24, 25, 27

*Dzwonar v. McDevitt*,
791 A.2d 1020 (N.J. Super. Ct. App. Div. 2002).....................................................30

*Elmore v. Owens-Illinois, Inc.*,
673 S.W.2d 434 (Mo. 1984) .....................................................................................9

*Kotlikoff v. Community News*,
444 A.2d 1086 (N.J. 1982)............................................................................ passim

*Maressa v. New Jersey Monthly*,
445 A.2d 376 (1982) ................................................................................................11

*Meyerkord v. Zipatoni Co.*,
276 S.W.3d 319 (Mo. Ct. App. 2008) ................................................................7

*Miele v. Rosenblum*,
603 A.2d 43 (N.J. Super. Ct. App. Div. 1991) ................................................12

*Molin v. Trentonian*,
297 N.J. Super. 153 (App. Div. 1997) ................................................10, 12, 16

*Nazeri v. Missouri Valley Coll.*,
860 S.W.2d 303 (Mo. 1993) (en banc) ..............................................................7

*Orso v. Goldberg*,
665 A.2d 786 (N.J. Super. Ct. App. Div. 1995) ..............................................13

*Overcast v. Billings Mutual Ins. Co.*,
11 S.W.3d 62 (Mo. 2000) (en banc) ..............................................................7, 8

*P.V. ex rel. T.V. v. Camp Jaycee*,
962 A.2d 453 (N.J. 2008) ..................................................................................8

*Reilly v. Gillen*,
423 A.2d 311 (N.J. Super. Ct. App. Div. 1980) ..........................................15, 26

*Romaine v. Kallinger*,
537 A.2d 284 (N.J. 1988) ........................................................................ passim

*Rossi v. CBS*,
No. A-4322-09T2, 2012 WL 2529357 (N.J. Super. Ct. App. Div. July 3, 2012) ..................24

*Salzano v. North Jersey Media Grp., Inc.*,
993 A.2d 778 (N.J. 2010), *cert. denied*, 131 S. Ct. 1045 (2011) .................... passim

*Senna v. Florimont*,
958 A.2d 427 (N.J. 2008) ..............................................................................23, 24

*Shafer v. Lamar Publ'g Co.*,
621 S.W.2d 709 (Mo. Ct. App. 1981) ................................................................7

*Sherman v. Bordentown Regional Sch. Dist.*,
23 Media L. Rep. 1168 (N.J. Super Ct. 1994) ..............................................22, 28

*Tindall v. Holder*,
892 S.W.2d 314 (Mo. Ct. App. 1994) ..............................................................12

*Walko v. Kean Coll. of N.J.*,
561 A.2d 680 (N.J. Super. Ct. Law Div. 1988) ..............................................28

*Ward v. Zelikovsky*,
    643 A.2d 972 (N.J. 1994)...................................................................................11, 18

*Westhouse v. Biondo*,
    990 S.W.2d 68 (Mo. Ct. App. 1999).............................................................8

*Y.G. v. Jewish Hosp. of St. Louis*,
    795 S.W.2d 488 (Mo. Ct. App. 1990).........................................................7

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I ........................................................................... passim

**STATUTES**

N.J.S.A. § 2A:43-2.............................................................................23

**RULES**

Fed. R. Civ. P. 12(b)(6)...........................................................1, 9, 26, 27

**OTHER AUTHORITIES**

Hon. Robert D. Sack on Defamation, § 4:3.1[D], Academic Debate
    (4th ed. 2011) ........................................................................18

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357
    (3d ed. 2004) .........................................................................3

Restatement (Second) of Conflicts of Laws ...............................................8

Restatement (Second) of Torts.................................................... passim

Defendant The Washington University (erroneously sued as "Washington University School of Law") ("Washington University") respectfully submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(6), for dismissal with prejudice of all claims against Washington University in Counts I-III of the Complaint in this action.

## PRELIMINARY STATEMENT

This case presents an assault on the foundation of legal scholarship: the ability of scholars to analyze ongoing cases and discuss their broader implications.  At issue is a Washington University Law Review article about developments in sex discrimination law, written by a tenured law professor, that discusses a publicly filed employment discrimination case in which the plaintiff, Robert Catalanello, was a defendant.  That case, *Pacifico v. Calyon et al.*, was filed in New York state court in January 2009 and remains available on the public docket to this day.

Mr. Catalanello cherry-picks twenty statements from the 35-page law review article on which to hang his defamation claim.  Tellingly, however, his list of grievances glaringly omits the article's lengthy recitation of statements actually attributed to Catalanello, which come directly and expressly from the *Pacifico* complaint.  Instead, Catalanello insists that he has been injured by the article's summary references to these allegations elsewhere in the article, as well as by its analysis of those allegations in the context of academic scholarship about gender discrimination and Title VII sex discrimination jurisprudence.

Lacking a legitimate basis to sue the person making the allegations or to seal the public records of his case, and finding himself outside the statute of limitations to sue any of the various news organizations that reported on that case at the time, Catalanello has now set his sights on a law review article that dares to reference his case in the context of a larger examination of the jurisprudence of sex discrimination claims in employment law.  But to the extent the article

discusses *Pacifico v. Calyon*, its references are absolutely privileged as a fair report of a publicly filed judicial complaint. And where fair report leaves off in the article, protection for opinion under the First Amendment picks up: any discussion of the case that is not a recounting of the complaint itself is plainly the author's analysis of the case in light of academic scholarship and sex discrimination jurisprudence. As such, the author's theorizing is not capable of being objectively proven true or false, but, rather, is opinion based on the allegations of the *Pacifico* case set forth in the article, and fully protected under the First Amendment. Moreover, the plaintiff did not and cannot plead any facts – much less facts that would nudge the complaint "from conceivable to plausible" – that would overcome the high bar of actual malice required to prevail on his claim against Washington University. Catalanello's false light claim fails for the same reasons as his defamation claim, and his claim for publication of private facts fails because statements attributed to him in a publicly filed lawsuit are simply not "private facts."

In short, this plaintiff attempts to muzzle legitimate academic discourse through a raft of frivolous claims against those who have the audacity to publish an academic article discussing a case in which he was a named defendant. The First Amendment and the well-established law of New Jersey stand as a bulwark against such bullying, and with good reason: entertaining this meritless claim would have an immediate chilling effect, threatening academics who write about pending cases as they advance complex legal theories. "More papers, more discussion, better data, and more satisfactory models – not larger awards of damages – mark the path toward superior understanding of the world around us." *Underwager v. Salter*, 22 F.3d 730, 736 (7th Cir. 1994) (Easterbrook, J.). For these reasons, and for the reasons stated below, the Court should dismiss all claims against Washington University with prejudice.

2

## FACTUAL BACKGROUND[1]

Washington University is a private university in St. Louis, Missouri.  Among its graduate and professional schools is the Washington University School of Law.  The Washington University Law Review is the law school's oldest and most prominent student-edited academic journal, publishing six issues per year.

Plaintiff Robert Catalanello is a New Jersey resident and has been an an elected councilman for the Borough of Madison since January 2011.  Compl. ¶ 6; Handman Decl. Ex. B.  Catalanello is a managing director at Credit Agricole CIB (formerly known as Calyon), a large global investment banking group whose principal place of business in the United States is at 1301 Avenue of the Americas, New York, New York.  Handman Decl. Ex. C (*Pacifico* Compl.), ¶ 2.

Catalanello was named as a defendant in the lawsuit *Pacifico v. Calyon, et al.*, which was filed in New York state court in January 2009 (hereinafter "*Pacifico*").  The case and all filed documents remain on the public docket to this day.  At the time the initial case was brought, the New York Daily News and the New York Post both reported on the claims.[2]

---

[1] The Statement of Facts is derived from the Complaint in this action, documents specifically referenced in or related to the Complaint, and public records.  Such documents are properly considered on a motion to dismiss.  *See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999); *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998); *see also* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004).  A copy of the Complaint ("Compl.") is attached as Exhibit A to the Declaration of Laura R. Handman, dated February 25, 2013 ("Handman Decl.").

[2] Jose Martinez, *Wall Streeter Sues Employer over Vegetarian Taunts*, N.Y. Daily News, Jan. 29, 2009, http://www.nydailynews.com/news/money/wall-streeter-sues-employer-vegetarian-taunts-article-1.372191; Dareh Gregorian, *Beef at Gay Insult*, N.Y. Post, Jan. 29, 2009, http://www.nypost.com/p/news/regional/item_YpeAqWZgDgFGi7UaftD6dJ.  The New York Daily News article is cited in the Article.  *See* Handman Decl. Ex. D at 292 n.25.

3

In the *Pacifico* case, Ryan Pacifico, a terminated employee, sued his former employer and Catalanello, his former supervisor, for discrimination under New York law.  Pacifico alleged that Catalanello had taunted him about being a vegetarian by, among other things, calling him a "vegetarian homo" and saying "You don't even eat steak dude.  At what point in time did you realize you were gay?"  Compl. ¶¶ 14, 21.  The complaint called for relief under New York state law for adverse employment actions "due to his being a vegetarian" and his "perceived sexual orientation."  *Id.* ¶¶ 29, 30.  Catalanello submitted a pro forma answer on August 12, 2009, in which he denied the allegations of the complaint.  The case never proceeded to trial, and no decision on the merits was ever issued.  On August 16, 2012, the case was voluntarily discontinued with prejudice, with neither side receiving an award of costs or attorney fees.  Handman Decl. Ex. E.

In or around March 2011, the Washington University Law Review ("Law Review") entered into a contract with Zachary A. Kramer, a tenured professor at Arizona State University's Sandra Day O'Connor College of Law, to publish his article titled *Of Meat and Manhood* (the "Article") as the lead article in Volume 89:2 of the Law Review.  (A copy of the Article is attached as Exhibit D to the Handman Declaration.)  Volume 89:2 of the Washington University Law Review, which contained the Article, was published in or around February 2012, both in print and online.

The Article critiques the way courts evaluate claims brought under a gender-stereotyping theory of sex discrimination.  As Professor Kramer explains in the introduction, the Article proceeds in three parts.  Part I describes the background of Title VII case law regarding sex discrimination.  Part II uses the case of *Pacifico v. Calyon* as a "case study," where "after providing an account of the employee's case, the centerpiece of this Part is an alternative reading

4

of the employee's discrimination claim." *Id.* at 292-93. Part III lays out the author's "new theory of unprotected traits in employment discrimination law." *Id.* at 294.

In the Article's introduction, Professor Kramer describes the *Pacifico* case as a "springboard" to challenge current theories of sex discrimination under Title VII and as a "vehicle for critiquing" the way that courts currently evaluate these cases; his interest is "less to do with the particulars" of the case than the "broader implications." *Id.* at 290, 292, 307. The Article describes the case as an "ongoing lawsuit in which an employee has brought a discrimination claim against his former employer, alleging that the employer discriminated against him because he is a vegetarian." The Article cites directly to the complaint filed in *Pacifico*, complete with its case docket number. The Article then briefly describes the "employee's claim," citing directly to the *Pacifico* complaint: "First, the employee charges that his supervisor taunted him because of his vegetarianism, calling him, among other things, a 'vegetarian homo.' Second, the employee alleges that the discrimination culminated in his being fired because of his vegetarianism." *Id.* at 292.

In Part II, the Article lays out the various allegations of the *Pacifico* complaint, quoting directly from the complaint with footnote citations. *Id.* at 305-06, nn.97-111. Next, in a subsection titled "Rereading the Claim," the Article "offers an alternative reading of Pacifico's case." Using the facts alleged in the complaint, the author "argues that Catalanello viewed Pacifico's vegetarianism as a proxy for effeminacy" and situates Pacifico's claims in the context of scholarship about the "relationship between food and cultural attitudes about homosexuality." *Id.* at 308. The author specifically notes that "[t]here is nothing to suggest that Catalanello – or others at his firm – actually thought that Pacifico was gay." *Id.* at 312. Ultimately, the Article concludes that were Pacifico to pursue his claim under Title VII today – which he did not, opting

only to sue under New York state laws – his claim would be unlikely to succeed, given the way that courts currently evaluate similar sex discrimination claims. The author then argues that the theories courts currently use to evaluate such claims are flawed and proposes a "new framework to sharpen Title VII's antidiscrimination project."

On December 28, 2012, Catalanello filed the instant complaint, bringing claims against Washington University for defamation, false light, and publication of private facts, based on its publication of the Article. Washington University never received any communication from the plaintiff, including a request for a retraction, until this complaint was filed, nor does the complaint allege otherwise. Specifically, Catalanello highlights 20 statements from the Article that he believes to be defamatory. Notably absent from this list are the portions of the Article that specifically set out Catalanello's alleged taunts and actions toward Ryan Pacifico, taken directly from the *Pacifico* complaint, that form the basis for the Article's "alternative reading" of the case and the author's theories about the current state of sex discrimination jurisprudence.

## <u>ARGUMENT</u>

## I. NEW JERSEY LAW APPLIES TO ALL COUNTS AGAINST WASHINGTON UNIVERSITY

Plaintiff asks this Court to apply the law of Missouri to the claims against Washington University (Counts One, Two and Three) and the law of Massachusetts to the claims against Western New England School of Law ("Western New England"), where a lecture on the Article was given, and both laws against the author who resides and works in Arizona. However, because there is no true conflict between the relevant laws of Missouri and New Jersey, and because New Jersey in any event has the most significant interest in the action, this Court should apply the substantive law of New Jersey to all claims against all defendants.

Since this case is before the Court on diversity jurisdiction, the applicable choice of law rules are those of New Jersey, the forum state.  *Echols v. Pelullo*, 377 F.3d 272, 275 (3d Cir. 2004).  Under New Jersey rules, "choice of law is not an issue unless there is a real conflict between the law of two jurisdictions."  *Cornett v. Johnson & Johnson*, 48 A.3d 1041, 1047 (N.J. 2012).  In this case, the laws of New Jersey and Missouri relevant to the plaintiff's claims are essentially the same.[3]  Under both New Jersey and Missouri law, a defamation plaintiff must show that the defendant published to a third party a false and defamatory statement about the plaintiff, with the requisite degree of fault, and causing damage to the plaintiff.  *Compare DeAngelis v. Hill*, 847 A.2d 1261, 1267-68 (N.J. 2004) (elements of defamation claim under New Jersey law) *with Overcast v. Billings Mutual Ins. Co.*, 11 S.W.3d 62, 70 (Mo. 2000) (en banc) (elements of defamation claim under Missouri law).  Both New Jersey and Missouri accept that statements of opinion are absolutely privileged under the First Amendment, and both jurisdictions recognize the fair report privilege.  *See Kotlikoff v. Community News*, 444 A.2d 1086 (N.J. 1982) (expressions of opinion protected under New Jersey law); *Salzano v. North Jersey Media Grp., Inc.*, 993 A.2d 778 (N.J. 2010) (fair report privilege in New Jersey), *cert. denied*, 131 S. Ct. 1045 (2011); *Nazeri v. Missouri Valley Coll.*, 860 S.W.2d 303, 314 (Mo. 1993) (en banc) (expressions of opinion protected under Missouri law); *Shafer v. Lamar Publ'g Co.*, 621 S.W.2d 709, 711 (Mo. Ct. App. 1981) (fair report privilege in Missouri).  Furthermore, both New Jersey and Missouri recognize false light claims and follow the Restatement (Second) of Torts for the elements of those claims.  *Romaine v. Kallinger*, 537 A.2d 284 (N.J. 1988);

---

[3] Presumably, Plaintiff tried to import Missouri law because he believed that his claims against Washington University would be barred by New Jersey's one-year statute of limitations.  As the New Jersey Supreme Court recently noted, however, a difference in the statute of limitations "does not create a true conflict of laws between these states."  *Cornett*, 48 A.3d at 1048. Nevertheless, because Washington University published the Article in February 2012, these claims would be timely under the law of both states.

*Meyerkord v. Zipatoni Co.*, 276 S.W.3d 319 (Mo. Ct. App. 2008).  Finally, both New Jersey and

Missouri recognize claims for publication of private facts.  *Romaine*, 537 A.2d 284; *Y.G. v.*

*Jewish Hosp. of St. Louis*, 795 S.W.2d 488 (Mo. Ct. App. 1990).

        Even if the Court were to find that a true conflict of laws exists,[4] New Jersey – and not

Missouri – law would apply under the "most significant relationship" test set forth in Section 145

of the Restatement (Second) of Conflicts of Laws and recognized by the New Jersey Supreme

Court in *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453 (N.J. 2008).  Catalanello pleads that the

Article was published in New Jersey (and elsewhere) and his reputation was injured in both New

Jersey and Missouri (Compl. ¶¶ 3, 4).[5]  New Jersey is the state where Catalanello resides and

where he serves as an elected official, but other than a conclusory recitation of injury and that the

Article was "initially published" and is "housed" in Missouri (Compl. ¶ 4), Catalanello has

---

[4] The Court can dismiss this action on fair report and opinion grounds without reaching the issue
of fault, addressed in Section III.C, *infra*, but if it does, New Jersey and Missouri law are not
identical in their application of the standard of fault.  Here, however, those differences should
have no impact.  In both New Jersey and Missouri, if plaintiff is deemed– as he should be – a
public official due to his standing as a City Councilman at the time the Article was published
(Handman Decl. Ex. B), or a limited purpose public figure given the pre-existing controversy
over the *Pacifico* lawsuit, actual malice would be the applicable standard of fault under both
state's laws, as dictated under the First Amendment.  *See, e.g.*, *New York Times Co. v. Sullivan*,
376 U.S. 254, 279-83 (1964); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974); *McDowell
v. Paiewonsky*, 769 F.2d 942, 948-49 (3d Cir. 1985).  Under New Jersey law, where, as here, the
challenged statements are about a matter of public concern, the applicable standard of fault in
New Jersey remains actual malice regardless of whether the plaintiff is considered a private
figure.  *See* Section III.C, *infra*.  Missouri recognizes that application of the actual-malice
standard "is not limited to the performance of official acts" by a public official; even statements
about the private conduct of a public official may be subject to the actual malice standard where,
as here, they "may touch on the officer's fitness to hold office."  *Westhouse v. Biondo*, 990
S.W.2d 68, 71 (Mo. Ct. App. 1999).  Otherwise, if plaintiff is deemed a purely private figure, the
applicable standard of fault under Missouri law is negligence.  *See Overcast*, 11 S.W.3d at 70.

[5] Catalanello also claims that his reputation was injured in Massachusetts for purposes of his
claims against defendants Western New England and Kramer in Counts IV-VI, but, for the same
reasons, New Jersey law would apply to those claims as well.  Catalanello also claims the Article
was "drafted" in Missouri (Compl. ¶ 4), but, presumably, the Article was drafted by Kramer in
Arizona and edited in both Arizona and Missouri.

alleged no facts to show why Missouri law should apply.  Section 150 of the Restatement

(Second) of Torts provides that, in defamation actions involving publication in multiple states,

"the state of most significant relationship will usually be the state where the person was

domiciled at the time, if the matter complained of was published in that state."  As Comment (e)

explains, this is because "[r]ules of defamation are designed to protect a person's interest in his

reputation"; therefore, courts should apply "the local law of the state where the plaintiff has

suffered the greatest injury by reason of his loss of reputation," which "will usually be the state

of the plaintiff's domicile if the matter complained of has there been published."

New Jersey courts applying choice-of-law analysis to defamation claims regularly follow

Section 150 and apply the substantive law of the plaintiff's domicile state.  *See Cibenko v. Worth*

*Publishers, Inc.*, 510 F. Supp. 761, 766 (D.N.J. 1981) (following Section 150 and applying New

Jersey law to false light claim where plaintiff was domiciled in New Jersey and publication

occurred in New Jersey as well as in other states); *Prager v. American Broad. Cos.*, 569 F. Supp.

1229, 1232 (D.N.J. 1983) (following Section 150 and applying New Jersey law to defamation

claim where plaintiff was domiciled in New Jersey and publication occurred in New Jersey as

well as in other states).  As a result, it is clear that Catalanello's claims should be analyzed under

New Jersey law. [6]

---

[6] Even if Catalanello were to file his case in Missouri, a Missouri court would still likely apply
New Jersey law.  The Missouri Supreme Court has stated that, in a defamation case where the
allegedly defamatory matter is published in multiple states, the most important consideration is
choosing the applicable law is the residence of the allegedly defamed party because "defamation
produces a special kind of injury that has its principal effect among one's friends, acquaintances,
neighbors and business associates in the place of one's residence" and therefore "[a]n injury from
defamation . . . does have a center in one's place of domicile." *Elmore v. Owens-Illinois, Inc.*,
673 S.W.2d 434, 437 (Mo. 1984).  *See also Fuqua Homes, Inc. v. Beattie*, 388 F.3d 618, 621-22
(8th Cir. 2004) (looking to Restatement (Second) Torts Section 150 and *Elmore* to hold that law
of plaintiff corporation's principal place of business would apply to defamation claim, since that
is the location in which plaintiff's reputation would be injured).

## II.      STANDARD OF REVIEW

Although a court must take the well-pled *factual* allegations as true for purposes of a

Rule 12(b)(6) motion, allegations that are simply legal conclusions "are not entitled to the

assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  "[A] plaintiff's obligation to

provide the grounds of his entitlement to relief requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).  Under the

standard set forth in *Twombly* and *Iqbal*, a plaintiff must provide "enough facts to state a claim to

relief that is *plausible* on its face," rather than merely possible.  *Twombly*, 550 U.S. at 570

(emphasis added); *Iqbal*, 556 U.S. at 695-96; *see also Great Western Mining & Mineral Co. v.*

*Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010) (affirming dismissal of complaint where

plaintiff made no showing beyond blanket assertion of entitlement to relief).  Where plaintiffs

"have not nudged their claims across the line from conceivable to plausible, their complaint must

be dismissed." *Twombly*, 550 U.S. at 570.

## III.     PLAINTIFF FAILS TO STATE A CLAIM FOR DEFAMATION

The Third Circuit has recognized that, while a defamation suit "fundamentally is a state

cause of action," it is also "replete with First Amendment implications." *Marcone v. Penthouse*

*Int'l Magazine for Men*, 754 F.2d 1072, 1077 (3d Cir. 1985).  Courts in New Jersey and

elsewhere repeatedly have recognized that early adjudication of defamation claims is necessary

to protect freedom of speech from the chilling effect of unwarranted claims.  Accordingly, in

order to winnow out non-actionable claims, discourage frivolous litigation and avoid

unnecessary legal fees, New Jersey courts have been encouraged to consider pre-discovery

dispositive motions in cases in which defamation is the gravamen of the action. *Kotlikoff* , 444

A.2d at 1088.  *See, e.g.*, *Molin v. Trentonian*, 687 A.2d 1022, 1025 (N.J. Super Ct. App. Div. 1997) (in dismissing libel action, trial court "correctly followed" the guidance of New Jersey Supreme Court cases that "encouraged expeditious disposition where possible in libel cases so that the press freedom would not be chilled by the attendant cost of and delays in litigation"); *Maressa v. New Jersey Monthly*, 445 A.2d 376, 387 (1982) (courts "should resolve free speech litigation more expeditiously whenever possible" because "[t]he perpetuation of meritless [libel] actions, with their attendant costs, chills the exercise of press freedom"); *Darakjian v. Hanna*, 840 A.2d 959, 967 (N.J. Super. Ct. App. Div. 2004) (where libel complaint failed to allege sufficient facts to overcome the fair report privilege, dismissal is "required by First Amendment policies and the responsibilities of courts to avoid rulings that unduly chill the press's freedom to report on matters of public interest").  *See also Schiavone Constr. Co. v. Time, Inc.*, 619 F. Supp. 684, 686 (D.N.J. 1985) (noting that, "probably more than any other type of case, summary judgments in libel actions should be readily available and granted where appropriate" in light of the "power of libel actions, even their mere threat or pendency, to destroy the press itself and with it the very foundation of our democracy"); *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966) (early adjudication is "even more essential" in cases implicating the First Amendment, "[f]or the stake here, if harassment succeeds, is free debate"); *Time, Inc. v. Hill*, 385 U.S. 374, 389 (1967) (recognizing that the expense in defending meritless defamation suits can have a chilling effect on First Amendment rights).

Under New Jersey law, the "threshold issue" in any defamation action is "whether the language used is reasonably susceptible of a defamatory meaning."  *Kotlikoff*, 444 A.2d at 1088. Statements of opinion that, on their face, do not imply specific statements of fact are not actionable, since they reflect the speaker's state of mind and are not capable of being true or

false.  *Ward v. Zelikovsky*, 643 A.2d 972, 979 (N.J. 1994).  Moreover, if the complained-of

statements are a "full, fair and accurate" account of an official document – including a publicly

filed complaint – the publisher is absolutely protected from liability by the fair report privilege.

*Salzano v. North Jersey Media Grp.*, 993 A.2d 778 (N.J. 2010).  These issues are threshold

questions of law to be decided by the court by examination of the statements in suit.  *Kotlikoff*,

444 A.2d at 1088; *Salzano*, 993 A.2d at 792.  In making this "threshold" determination, the court

must evaluate the statements "according to the fair and natural meaning which would be given

[them] by reasonable persons of ordinary intelligence."  *Molin*, 687 A.2d at 1023 (citation

omitted).  Furthermore, the Court must "view the publication as a whole and consider

particularly the context in which the statement was made."  *Id.  See also Romaine*, 537 A.2d at

288 (same).

Plaintiff highlights a list of 20 statements from the Article that he claims are defamatory.[7]

Compl. ¶ 14.  It is not clear why many of these were selected, and plaintiff's complaint does not

specify the defamatory meaning of these statements or what is false about the statements. [8]  All

---

[7] Although the statements are not individually numbered in the complaint, they are herein
referenced individually based on the numerical order in which they are presented in Paragraph 14
of the Complaint.  The Complaint also suggests that these 20 statements are not a comprehensive
list of everything the plaintiff considers defamatory.  (Compl. ¶ 14, claiming that allegedly
defamatory statements in the article "include, but are not limited to" the following list.)  To the
extent Plaintiff is asserting claims based on statements that are not specifically set forth in the
Complaint, he has failed to state a claim for such statements under both New Jersey and Missouri
law, which require a plaintiff to set forth the specific words complained of.  *See Miele v.
Rosenblum*, 603 A.2d 43, 44-46 (N.J. Super. Ct. App. Div. 1991); *Tindall v. Holder*, 892 S.W.2d
314, 327 (Mo. Ct. App. 1994).

[8] Furthermore, several of the highlighted statements are non-actionable for the independent
reason that they are not about the plaintiff.  For example, Statement No. 9 reads: "Pacifico
worked on Wall Street, a stronghold of machismo culture, and Pacifico's firm seemed to fit that
mold."  Statement 10 reads: "On numerous occasions the firm's masculine culture revealed itself
in conversations about what to eat."  Putting aside the fact that statements characterizing the
"culture" of Wall Street and Calyon are plainly non-actionable opinion and are in any event non-
defamatory, there is no basis to believe that Mr. Catalanello is "synonymous" with his global

are plucked from the larger context of the Article without page citations, and many deliberately omit adjacent language making clear that these are either a fair report of the *Pacifico* complaint or else the argument and opinion of the author based on those disclosed allegations.  When placed back into the context of the Article as a whole – as required by black-letter law – none of these cherry-picked statements can support a valid defamation claim.

### A.  Statements Referencing Allegations in the *Pacifico* Complaint are Absolutely Protected by the Fair Report Privilege

In *Salzano v. North Jersey Media Group*, the New Jersey Supreme Court held that a full, fair and accurate report of allegedly defamatory statements contained in a publicly filed complaint is absolutely privileged and may not be overcome even by a showing of actual malice. 993 A.2d at 790, 796-97.  In order to be full, fair and accurate, "it is not necessary that the account be exact in every detail, so long as it conveys to the persons who read it a substantially correct account."  *Orso v. Goldberg*, 665 A.2d 786, 790 (N.J. Super. Ct. App. Div. 1995) (citing Restatement (Second) of Torts § 611, cmt. f, and *Costello v. Ocean County Observer*, 136 N.J. 594, 607 (1994)).  Whether a report qualifies as full, fair and accurate is an objective threshold determination for the court based on comparison of the judicial proceedings and the publication in suit.  *Salzano*, 993 A.2d at 792.  As the *Salzano* court reasoned, application of the fair-report privilege to publicly filed complaints comports with the state's commitment to public access to court records, since any citizen can present himself at a local courthouse to "see [the] filed pleadings for himself."  *Id.* at 790-91.  The fair report privilege requires dismissal even if the underlying allegations are without merit.  *See id.* at 797 ("[S]o long as the publisher fully, fairly

---

banking employer or with "Wall Street" in general. As a result, these statements cannot be considered "of and concerning" the plaintiff and are thus non-actionable.  *See Jovanovic v. Northrop Grumman Corp.*, Civ. No. 05-4487 (DMC), 2010 WL 1644690, at *4 (D.N.J. Apr. 22, 2010) (absent showing that plaintiff is "synonymous" with the corporation, allegedly defamatory statement about the corporation is not "of and concerning" the plaintiff).

13

and accurately reports the contents of a public proceeding, he has done what is necessary and is immune from a suit for defamation based on false statements made, not by him, but by the participants in the proceeding.").

*Salzano* is particularly instructive in this case.  In *Salzano*, the media defendant published an article describing the allegations of a complaint filed in federal bankruptcy court.  Finding that the article was covered by the fair report privilege, the court noted the article "stated that it was reporting the 'allegations' in the trustee's complaint"; furthermore, the article stated up front that the allegations came from court papers filed in federal bankruptcy court, and "other sections of the report discuss[ed] other specific details of the complaint itself."  Thus, the court concluded, "a reasonable person would understand [from the article] that the complaint alleged certain facts, but that those allegations had not yet been adjudicated."  *Id.* at 793.  Furthermore, the court noted that to the extent the article used different phrases than the complaint, "the 'sting' of the [article] was essentially the same as that of the complaint."  *Id.* at 794.  As a result, the court found that the publication was a "full, fair and accurate" report entitled to the absolute protection of the fair-report privilege.  *Id.*

As in *Salzano*, it is clear that any reasonable reader of the Article – and certainly the lawyers and legal scholars who were its intended audience – would understand from its discussion of the *Pacifico* case "that the complaint alleged certain facts, but that those allegations had not yet been adjudicated."  *Salzano*, 993 A.2d at 793.  The Article describes *Pacifico v. Calyon* up front as an "ongoing lawsuit" (Article at 292); states that the employee was "alleging that the employer discriminated against him because he was a vegetarian" (*id.*) (emphasis added); describes the "charges," "claims" and "alleg[ations]" of the complaint (*id.*); and cites directly to the complaint in footnotes throughout the Article.  *See, e.g.*, *id.* at 292, 305-09.  For

14

the avoidance of doubt, the Article specifically states that "[t]here is nothing to suggest that Catalanello – or others at the firm – actually thought Pacifico was gay." *Id.* at 312.  Furthermore, there is no indication that the Article's description of the *Pacifico* case draws on anything more than the publicly filed complaint.  Nor does the Article misrepresent the complaint by presenting a "sting" that is "broad[er]" than the *Pacifico* complaint itself.  *Salzano*, 993 A.2d at 793.[9]  *See also Lavin v. New York News, Inc.*, 757 F.2d 1416, 1421 (3d Cir. 1985) (affirming dismissal of libel claim as privileged fair report where no reasonable fact-finder could conclude that the article in question was "more pejorative than the FBI affidavit" upon which it was based).

Recognizing that the fair report privilege is fatal to his claims, Catalanello tries to avoid it through creative pleading.  Page 306 of the Article provides a useful illustration.  Quoting from and citing directly to the *Pacifico* complaint, the Article recounts the various taunts attributed to Catalanello (calling Pacifico "gay," "homo" and "vegetarian homo"); that Catalanello "scheduled business meals at steakhouses and burger joints so Pacifico would not be able to eat anything"; that Catalanello told Pacifico, "You don't even eat steak dude.  At what point did you realize you were gay?"; that he mocked Pacifico's athleticism in front of coworkers, referring to his triathlon gear as "gay tights" and a triathlon magazine on his desk as a "homo magazine"; and that he belittled Pacifico's work performance in front of coworkers, telling him, "Get a set of balls and make a price.  Don't always be such a homo."  Tellingly, <u>Catalanello does not challenge a single one of these statements as actionable.</u>  Instead, he claims that he has been

_____

[9] As a result, this case is wholly distinguishable from *Reilly v. Gillen*, 423 A.2d 311 (N.J. Super. Ct. App. Div. 1980), in which the defendant distributed a 23-year-old news article reporting on charges that the defendant knew had, in the intervening years, been dismissed and shown to be false.  Unlike the scenario in *Reilly*, *Pacifico* was still an ongoing lawsuit at the time the Article was published, and no decision on the merits was ever issued.  No reasonable reader of the Article could conclude from its multiple citations to the *Pacifico* complaint that Catalanello had been adjudicated "guilty of wrongdoing."  *Reilly*, 423 A.2d at 315.

defamed by the following two sentences, which appear just *prior* to the litany of allegations: "From then on, Catalanello subjected Pacifico to a steady barrage of taunts, insults and demeaning antics. The bulk of the harassment aimed to belittle Pacifico by equating vegetarianism with homosexuality." But allegedly defamatory language must be considered in context and in light of the publication as a whole (*Molin*, 687 A.2d at 1023), and it is absolutely plain that these two introductory statements are a fair report of the allegations that are set forth in detail on the preceding pages and over the immediately following several paragraphs. If anything, the "sting" of the two allegedly defamatory statements is arguably far less than that of the complaint.[10]  *See Salzano*, 993 A.2d at 794.

      The omissions on Catalanello's list of allegedly defamatory statements speak volumes. In passing over those portions of the Article that recount the *Pacifico* complaint's specific allegations and challenging only summary references to those specific allegations – for example, references to Catalanello's "discrimination" or "harassment" elsewhere in the Article – Catalanello implicitly admits that the Article's description of the conduct attributed to him by *Pacifico* is absolutely privileged as a fair report. But Courts "presume that the public reads the entire article when [they] assess its fairness and accuracy"; therefore, to the extent Catalanello is claiming defamation based on the Article's subsequent references to this same conduct, the same privilege applies. *Salzano*, 993 A.2d at 793.

---

[10] Statement 11 provides a similar example: "Knowing full well that Pacifico was vegetarian, Catalanello sought to punish Pacifico by refusing to order anything but meat for work-related meals . . . ." Catalanello plucks this statement from Page 309 of the Article, but he conveniently omits the remainder of the sentence, which consists of a direct quote from the *Pacifico* complaint attributed to Catalanello ("I'm only ordering burgers. If you don't eat meat, too bad. I don't care.") and a footnote citing directly to the complaint. Read in context, the complained-of language is merely a summary of the omitted quote from the complaint. Moreover, it is nearly identical to a similar statement on Page 305 that Catalanello has not challenged: "[Catalanello] scheduled business meals at steakhouses and burger joints so Pacifico would not be able to eat anything."

16

**B.**   **Statements Presenting Professor Kramer's Analysis of the Case are Non-Actionable Opinion**

While the Article presents a fair report of the *Pacifico* complaint, it is clear that the Article is not a news report of the *Pacifico* case; it is an academic article by a law professor advancing theories and proposals for sex discrimination law.  The "centerpiece" of the Article's discussion of *Pacifico* is Professor Kramer's "alternative reading" of Ryan Pacifico's discrimination claim, analyzing it in the context of academic scholarship about the relationship between food and stereotypes about gender and sexuality and using it as a case study to propose new approaches to sex discrimination claims brought under Title VII.  Article at 293.  The majority of the statements alleged by Catalanello to be defamatory are plucked from this section, with qualifiers like "[a]s I argue below" and "[t]o put this in terms of a discriminatory causation analysis" deliberately excised.  Article at 307, 310.[11]  Even reviewed out of context as set forth in Catalanello's Complaint, it is plain that these statements are non-actionable opinion.  Read in their proper context and in light of the publication as a whole, which carefully lays out the allegations of *Pacifico*, it is clear that none of these statements presents a viable defamation claim.

Federal courts have repeatedly dismissed defamation claims based on an author's theories or conclusions in an academic forum.  *See, e.g.*, *Ony, Inc. v. Cornerstone Therapeutics, Inc.*, No. 11-CV-1027S, 2012 WL 1835671, at *8 (W.D.N.Y. May 18, 2012) (dismissing defamation claims based on author's conclusions in a scholarly journal, recognizing that "academic freedom is a special concern of the First Amendment" and that "the chilling effect of protracted litigation can be especially severe for scholarly journals") (internal quotation marks and citations omitted); *Freyd v. Whitfield*, 972 F. Supp. 940, 945, 946 (D. Md. 1997) (dismissing defamation claim

---

[11] The quoted language was excised by Catalanello from Statements No. 4 and 15, respectively.

based on statements at academic lecture, finding that statements on repressed memory at a lecture "cannot be objectively characterized as true or false" and "such opinions are particularly appropriate, and expected, in the broader social context of an academic lecture").  They have done so because, as the Supreme Court has declared, "the heart of the First Amendment is the recognition of the fundamental importance of the free flow of ideas and opinions on matters of public interest and concern."  *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988).  The Court has recognized that freedom of expression needs "breathing space" to survive.  *See New York Times*, 376 U.S. at 271-72.  Furthermore, it has specifically acknowledged this principle in the context of academic discourse.  *Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957) ("Scholarship cannot flourish in an atmosphere of suspicion and distrust.").  *See* Hon. Robert D. Sack on Defamation, § 4:3.1[D], Academic Debate, at 4-45 (4th ed. 2011) ("Although opinion generally receives constitutional protection based on the argument that it is incapable of being proved true or false, in some cases it might be more accurate to say that courts *ought not* to determine truth or falsity rather than that they *cannot*.").

Under New Jersey law, when faced with the question of whether a statement is actionable fact or protected opinion, a court "must consider the content, verifiability, and context of the challenged statements."  *Ward*, 643 A.2d at 978.  "Verifiability" looks at whether the statement is one of fact or opinion, "because statements of opinion and name-calling, which cannot be proved true or false, are not actionable."  *Edelman v. Croonquist*, No. 09-1938, 2010 WL 1816180, at *3 (D.N.J. May 4, 2010) (internal quotation marks and citations omitted).  *See also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (statements of opinion that "do[] not contain a provably false factual connotation will receive full constitutional protection" and, hence, are not actionable); *Gertz v. Robert Welch, Inc.*, 418 U.S. at 339 ("Under the First

18

Amendment there is no such thing as a false idea.")  As the Third Circuit has noted, "New Jersey favors the interests of free speech even though statements of opinions may cause injury, because, unlike false statements of fact, opinions are more likely to contribute to a robust debate." *Nanavati v. Burdette Tomlin Mem. Hosp.*, 857 F.2d 96, 106 (3d Cir. 1988).  Whether a statement is protected opinion is a matter of law for the court to determine.  *Kotlikoff*, 444 A.2d at 1088.

New Jersey courts recognize two types of opinion.  "Pure" opinion is found where the author "states the facts on which he bases his opinion of the plaintiff and then states a view as to the plaintiff's conduct, qualifications, or character."  *Id.* at 1089.  Expressions of "pure" opinion may not serve as the basis of a defamation claim, especially where they involve a matter of public concern.  *Id.*  Statements of "mixed" opinion are those that imply undisclosed facts; such statements are only actionable if they imply the existence of "undisclosed defamatory facts as the basis for the opinion."  *Id.* (citing Restatement (Second) of Torts § 566).

The statements from the Article complained of by Catalanello fall squarely within the realm of "pure opinion."  The Article's entire analysis of the *Pacifico* case is preceded by – and framed by – the allegations of the *Pacifico* complaint itself.  The Article lays out the allegations of the complaint in detail and cites directly to the publicly-filed document.  There is no suggestion in the Article that Professor Kramer's discussion of the *Pacifico* case draws on anything more than the publicly filed complaint, nor does Catalanello allege that the Article implies any undisclosed facts.

For example, Statement No. 3 states Professor Kramer's belief that Pacifico's state-law claim "appears strong on its face."  This is nothing but Professor Kramer's pure opinion based on the disclosed facts of the *Pacifico* complaint.  His belief – offered as an aside –is prefaced by the author's disclaimer:  "[m]y interest in Pacifico's case has less to do with the particulars of his

state law claim" and immediately followed by "than with the broader implication of

discrimination he faced in the workplace and why it poses a fundamental challenge to existing

sex discrimination norms," underscoring that the allegations of the case are just a launching pad

for his larger legal theories.  Article at 307.  Similarly, the statement that Pacifico faced "sex

discrimination in the form of gender stereotyping" (No. 5) is simply Professor Kramer's

application of the legal framework used in Title VII cases as an "alternate reading" or

"rereading" of the allegations in *Pacifico*'s state-law complaint.  In other words, Kramer is

offering his theory about how these claims might have been pled to state a Title VII claim.

Finally, Catalanello challenges a number of statements that set forth the author's theories

about Catalanello's motivations (*e.g.*, Statement Nos. 4, 6, 8-20), placed in the context of

academic scholarship about perceptions of masculinity.  For example, the author opines that

"vegetarianism and sexual orientation merely served as proxies for the real reason Catalanello

and others discriminated against Pacifico – he failed to conform to their idea of how a 'real' man

is supposed to look and act" (Statement No. 4); that Catalanello "viewed Pacifico's

vegetarianism as a proxy for effeminacy" (Statement No. 6); that Catalanello "purposely sought

to punish Pacifico by refusing to order anything but meat for work-related meals" (Statement No.

11); that Catalanello's attitude about Pacifico's vegetarianism "is rooted in a gender stereotype

about manliness" (Statement No. 12); that Catalanello harassed Pacifico "not because Pacifico is

vegetarian, but because Pacifico was not significantly masculine" (Statement No. 15); and that,

"[b]y taking aim at Pacifico's dietary preferences, Catalanello was engaging in a familiar

practice by which heterosexual men try to make other heterosexual men seem insufficiently

masculine" (Statement No. 17).  These statements are plainly non-actionable opinion.  As courts

have noted, where "it is plain that the speaker is expressing a subjective view, an interpretation, a

theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Haynes v. Alfred Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993) (Posner, C.J.).  Noting that a person's motivations "can never be known for sure (even by [the actor])," Judge Posner held in *Haynes* that a statement in a book implying that the plaintiff was financially motivated in leaving his wife for another woman was non-actionable opinion. Posner further pointed out that the author's inferences were based only on facts about the plaintiff's behavior that were described in the book, noting that the author "did not pretend to have the inside dope" about the plaintiff's motivations; instead, he offered only "insight, not information that the plaintiff might be able to prove false in a trial." *Id.  See also Price v. Viking Penguin, Inc.*, 881 F.2d 1426, 1432 (8th Cir. 1989) ("[S]tatements regarding motive[] are 'intrinsically unsuited' to serve as a basis for libel.") (citation omitted).

The only "facts" about the plaintiff on which the author relies in these statements are, once again, the fully disclosed allegations of the *Pacifico* complaint.  Like the book at issue in *Haynes*, the Article "did not pretend to have the inside dope" about Catalanello's internal motivations or thoughts, but simply provided the author's insight, inferences, and conjecture based on his actions as alleged in the *Pacifico* complaint and fully set forth in the Article. Because "statements of opinion premised on disclosed facts [are], as a matter of law, not defamatory," these statements are not actionable.  *Yourman v. People's Sec. Life Ins. Co.*, 992 F. Supp. 696, 706 (D.N.J. 1998).  *See also Riley v. Harr*, 292 F.3d 282, 292, 294 (1st Cir. 2002) (statement in nonfiction book that witness was "lying" during trial testimony was protected opinion where it followed a summary of the evidence on which assessment was based); *Partington v. Bugliosi*, 56 F.3d 1147, 1156-57 (9th Cir. 1995) ("[W]hen an author outlines the facts available to him, thus making it clear that the challenged statements represent his own

interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment."); *Moldea v. New York Times Co.*, 22 F.3d 310, 317 (D.C. Cir. 1994) ("Because the reader understands that [the challenged statement] represent[s] the writer's interpretation of the facts presented, and because the reader is free to draw his or her own conclusions based upon those facts, this type of statement is not actionable in defamation.") (internal quotation marks and citation omitted); *Sherman v. Bordentown Regional Sch. Dist.*, 23 Media L. Rep. 1168, 1171-72 (N.J. Super. Ct. 1994) (dismissing libel claim based on articles suggesting that plaintiff's affair with teacher was consensual where plaintiff did not challenge articles' reporting of the underlying facts of the affair, which were the subject of a criminal case); *Edelman*, 2010 WL 1816180, at *5-7 (dismissing defamation claims based on statements characterizing plaintiffs as "racist" as non-actionable opinion, noting that the basis for defendant's opinion was recounted in the complaint).

Furthermore, context is key to determining whether particular statements, read in light of the work as a whole, constitute fact or opinion. *See, e.g.*, *Levin v. McPhee*, 119 F.3d 189, 197 (2d Cir. 1997) (statements in article speculating about circumstances of fire not actionable where the article included "clear signals" to indicate that the author's version of events were opinion and not fact); *Moldea*, 22 F.3d at 315 (statements in book review constitute non-actionable opinion where they were "evaluations quintessentially of a type readers expect to find in that genre"). The Article provides the clearest possible "signals" that it is a work of theory, scholarship and opinion about developments in sex discrimination law, and that it is using "an alternative reading" or "rereading" of the Pacifico claim to support those theories and opinions; it is plainly not cast as a new and authoritative factual investigation of the events giving rise to the *Pacifico* complaint. In this context, the Article's statements about the allegations in *Pacifico* are

22

"quintessentially of a type readers expect to find" in a law review article, and are, therefore, non-actionable opinion. *Moldea*, 22 F.3d at 315. *See also Nanavati*, 857 F.2d at 107-08 (fact that defendant was addressing "knowledgeable listeners" who understood the context of his remarks "strongly favor[ed]" treating statements as protected opinion).

### C.     Plaintiff Has Failed to Sufficiently Allege the Requisite Level of Fault

Plaintiff's claim fails for another, independent reason: he did not and cannot plausibly plead actual malice.  Under New Jersey law, a plaintiff must be able to show that an allegedly defamatory statement was made with actual malice where the speech concerns a public official or involves a matter of public concern.[12] *Senna v. Florimont*, 958 A.2d 427, 443 (N.J. 2008).  In determining whether the speech involves a matter of "public concern" subject to the actual-malice standard, courts consider the "content, form, and context of the speech." *Id.* at 444 (citing *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985)).  The New Jersey Supreme Court describes the relevant analysis:

> Content requires that we look at the nature and importance of the speech.  For instance, does the speech in question promote self-government or advance the public's vital interests, or does it predominantly relate to the economic interests of the speaker?  Context requires that we look at the identity of the speaker, his ability to exercise due care, and the identity of the target audience.

> This much we can say for certain.  Discourse on political subjects and critiques of the government will always fall within the category of protected speech that implicates the actual-malice standard.  Public policy and common sense also suggest that the same protections be given to speech concerning significant risks to public health and safety.  On the other hand, there is no great societal benefit or higher free speech value in providing heightened protection for the defamatory and false statements uttered by one business competitor against another.  That

---

[12] Furthermore, since the plaintiff did not request a retraction from the Washington University Law Review, malice is also relevant to his demand for damages.  Pursuant to N.J.S.A. § 2A:43-2, having made no request for a retraction, Catalanello is precluded from recovering punitive damages absent a showing of malice. *Bock v. Plainfield Courier-News*, 132 A.2d 523, 528 (N.J. Super. Ct. App. Div. 1957).

> form of commercial speech, generally, will call for the application of the
> negligence standard.

*Id.* at 444 (citation omitted).  Furthermore, "where the speaker is disinterested, as is generally the case with the media, enhanced protections inhere if the publication touches on matters of public concern." *Salzano*, 993 A.3d at 798.

Catalanello is a public official in New Jersey, and was an elected member of the Borough of Madison City Council at the time the Article was published.  Handman Decl. Ex. B. Furthermore, the topic of the Article – proposing new approaches for U.S. courts to apply in evaluating workplace discrimination claims – "advance[s] the public's vital interests" and can hardly be categorized as "commercial speech" between business competitors.  Therefore, the applicable standard is actual malice.  Even if Catalanello is considered a private figure, New Jersey courts have routinely "applied the actual-malice standard to defamation lawsuits brought by private-figure plaintiffs against media defendants" based on stories "regarding a matter of public interest or concern." *Durando v. Nutley Sun*, 37 A.3d 449, 457 (N.J. 2012) (listing cases). *See also Rossi v. CBS*, No. A-4322-09T2, 2012 WL 2529357, at *6-8 (N.J. Super. Ct. App. Div. July 3, 2012) (affirming dismissal of defamation claim against local news outlet for report on Little League coach's altercation with opposing player at game, finding that the incident "indisputably" involved a matter of public concern and plaintiff failed to show actual malice).

In order to show actual malice, the plaintiff must be able to show that "the publisher knew the statement to be false or acted in reckless disregard of its truth or falsity." *Durando*, 37 A.3d at 459.  That an author or publisher "'should have known' or 'should have doubted the accuracy' of an article before publishing it is insufficient to show reckless disregard for the truth" (original italics omitted).  The standard "is not measured by how the reasonably prudent editor would have handled the matter" and will shield even "careless acts of publication that

24

would be considered irresponsible by common journalistic standards." *Id.  See also Tucker v. Fischbein*, 237 F.3d 275, 286 (3d Cir. 2001) (Alito, C.J.) ("[A] failure to investigate, standing alone, does not constitute actual malice.").  Moreover, even "highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers" will not suffice to establish actual malice.  *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 663-64 (1989) (emphases added); *see also Newton v. NBC*, 930 F.2d 662, 669 (9th Cir. 1990) ("Even an extreme departure from accepted professional standards of journalism will not suffice to establish actual malice.").  Examples of the type of conduct that could meet the high bar of the actual-malice standard include a showing that the story was "fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call." *Durando*, 37 A.3d at 459-60 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968)).

In the wake of *Iqbal* and *Twombly*, courts have made clear that it is not enough for plaintiff simply to recite that a publication was made with the requisite level of fault or to make conclusory assertions of the elements of actual malice.  To survive a motion to dismiss, the plaintiff must plead specific facts that would make such a claim plausible.  *See, e.g.*, *Schatz v. Republican State Leadership Comm'n*, 669 F.3d 50, 56 (1st Cir. 2012) (dismissing libel complaint that "used actual-malice buzzwords" because these were "merely legal conclusions, which must be backed by well-pled facts"); *Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 377-78 (4th Cir. 2012) (dismissing libel claim where plaintiffs pled only "conclusory" allegations of actual malice amounting to "a mere recitation of the legal standard"); *Hanks v. Wavy Broad., LLC*, No. 11 Civ. 439, 2012 WL 405065, at *12 (E.D. Va. Feb. 8, 2012) ("Since *Iqbal* and *Twombly*, in cases where a defamation claim requires a showing of actual malice, courts in the

Eastern District of Virginia have found that 'conclusory allegations regarding the [defendants']

intent are . . . insufficient to survive a motion to dismiss.'") (citation omitted); *Egiazaryan v.*

*Zalmayev*, No. 11 Civ. 2670, 2011 WL 6097136, at *8 (S.D.N.Y. Dec. 6, 2011) (granting Rule

12(b)(6) dismissal where plaintiff "fails plausibly to allege actual malice . . . because . . . he alleges

no facts plausibly supporting that [legal] conclusion"); *Orenstein v. Figel*, 677 F. Supp. 2d 706, 711

(S.D.N.Y. 2009) (granting Rule 12(b)(6) dismissal of defamation claim where plaintiff pleaded no

factual support for conclusory recitation of elements of actual malice).[13]

Here, Catalanello pleads only that defendants published the statements "negligently and/or

maliciously and/or with knowledge of their falsity or a high degree of awareness of their probable

falsity." This is nothing more than a "formulaic recitation" of the elements of negligence and actual

malice, which is "not entitled to the assumption of truth" under *Iqbal* and *Twombly*. *Twombly*, 550

U.S. at 555; *Iqbal*, 556 U.S. at 679. Lacking any facts to make his fault claim "plausible,"

Catalanello's claim cannot survive dismissal under Rule 12(b)(6). *Twombly*, 550 U.S. at 570;

*Iqbal*, 556 U.S. at 695-96.

Furthermore, any amendment to the Complaint would be futile. The underlying

allegations of *Pacifico* were never adjudicated, much less adjudicated false at the time the Article

was published. *See Reilly v. Gillen*, 423 A.2d 311, 315 (N.J. Super. Ct. App. Div. 1980) ("[T]he

truth of an alleged libel must be measured 'as of the time of the defamatory publication.'")

---

[13] Even New Jersey state courts – where federal pleading standards do not apply – have dismissed
defamation claims that fail to allege a specific factual basis for actual malice. *See Darakjian v.*
*Hanna*, 840 A.2d 959, 967 (N.J. Super Ct. App. Div. 2004) (collecting cases). The court in
*Darakjian* noted that "[t]o permit a defamation action against press persons or entities to survive
on the basis of a mere allegation of knowledge of falsity or reckless disregard affords insufficient
breathing space to the critical rights protected, in the public interest, by the First Amendment,"
and declared that dismissal of such complaints is "required by First Amendment policies and the
responsibilities of courts to avoid rulings that unduly chill the press's freedom to report on
matters of public interest." *Id.* at 965, 967.

(citation omitted).  Therefore, Catalanello could not plausibly plead that Washington University

"knew the statement[s] to be false" or "acted with reckless disregard of [their] truth or falsity" at

the time the Article was published.  *See Bose Corp. v. Consumers Union of United States, Inc.*,

466 U.S. 485, 512-13 (1984) (determination of actual malice based on publisher's knowledge at

the time of publication).  Moreover, given that the Article was the work of a highly reputable

author – a tenured law professor whose research focuses on sex discrimination law – the plaintiff

cannot plausibly plead that Washington University was even negligent, much less acted with

actual malice, in relying on and publishing his work.  *See Chaiken v. VV Publ'g Corp.*, 119 F.3d

1018, 1032 (2d Cir. 1997) (publisher may not be liable for article "if it relies upon the integrity

of a reputable author and has no serious reason to question the accuracy of the information

provided by that author").  As a result, these claims should be dismissed outright.  *See In re

Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434-35 (3d Cir. 1997) (court may dismiss

claims under Rule 12(b)(6) without leave to amend where amendment would be futile).

## IV.    PLAINTIFF FAILS TO STATE CLAIMS FOR INVASION OF PRIVACY

### A.    Plaintiff's False Light Claim Fails for the Same Reasons as His Defamation Claim

Plaintiff's false-light claim fares no better than his defamation claim.  To prove a claim of

false light in New Jersey, a plaintiff must show that he was placed in a false light that would be

"highly offensive to a reasonable person" and that the defendant "had knowledge of or acted in

reckless disregard as to the falsity of the publicized matter and the false light in which the

plaintiff would be placed."  *Romaine*, 537 A.2d at 290 (citation omitted).  The requisite fault

"parallels the requirements of the actual-malice standard."  *Durando*, 37 A.3d at 458.  To be

actionable, the publicized material must constitute a "major misrepresentation" of the plaintiff's

"character, history, activities or beliefs" that would be "highly offensive to a reasonable person."

27

*Romaine*, 537 A.2d at 290.  As with defamation, the court "should not consider words or elements in isolation, but should view them in the context of the whole article to determine if they constitute an invasion of privacy."  *Id.* at 290-91 (citation omitted).

Plaintiff's claim for false light invasion of privacy is based on the same facts as his defamation claim, and it fails for the same reasons.  A false light claim is not viable where it is based on the same publication that a court has held nondefamatory and privileged under the First Amendment.  *Walko v. Kean Coll. of N.J.*, 561 A.2d 680, 687 (N.J. Super. Ct. Law Div. 1988). *See also Riley*, 292 F.3d at 298 ("same constitutional protections that compelled the district court to dismiss his defamation claims" apply to false light claim).  As a result, all of the complained-of statements that constitute protected opinion are similarly inactionable under a false light theory.  *See Cibenko v. Worth Publishers*, 510 F. Supp. 761, 767 (D.N.J. 1981) ("[F]or the same reasons that the [statements at issue] constitute opinion, and thus may not predicate a defamation action, no false light invasion of privacy action may lie.")  Furthermore, as with his defamation claim, Plaintiff did not and cannot plead any facts supporting actual malice sufficient to survive a motion to dismiss in light of *Iqbal* and *Twombly*.  *See* Section III.C, *supra*.

Catalanello's false-light claim also fails because the Article cannot be said to amount to a "major misrepresentation" of the underlying complaint in *Pacifico*.  Indeed, the Article's description of the claims in *Pacifico* does not place Catalanello in any different light than the complaint itself.  *See Sherman*, 23 Media L. Rep. at 1173 (dismissing false light claim where articles  in question "did not amount to a major misrepresentation of the events"); *Machleder v. Diaz*, 801 F.2d 46, 57-58 (2d Cir. 1986) (dismissing false light claim against broadcaster that aired film footage of plaintiff's statements, finding that any portrayal of plaintiff as "intemperate and evasive" "could not be false since it was based on [plaintiff's] own conduct") (applying New

28

Jersey law).  Moreover, courts may not "hold [] a media defendant liable for [publishing] truthful statements and actions because it failed to include additional facts which might have cast the plaintiff in a more favorable or balanced light."  *Machleder*, 801 F.2d at 55.  "To permit recovery in such circumstances violates the First Amendment," which the Supreme Court has held to protect independent editorial judgment.  *Id.* at 53-55.  Furthermore, Catalanello cannot show that any allegedly false light would be "highly offensive" – a standard that has been narrowly construed by courts "[i]n order to avoid a head-on collision with First Amendment rights."  *Id.* at 58 (portrayal of plaintiff as "intemperate and evasive" not "highly offensive"); *see also, e.g.*, *Virgil v. Sports Illustrated*, 424 F. Supp. 1286, 1289 (S.D. Cal. 1979) (article reporting plaintiff participating in gang fights, eating insects, and hurting himself to apply for unemployment insurance so that he would have time for body surfing not "highly offensive" enough to support false light claim); *Arrington v. New York Times Co.*, 434 N.E.2d 1319, 1322-23 (N.Y. 1982) (use of plaintiff's photograph to illustrate "materialistic, status-conscious" black middle class would not be "highly offensive").  As a result, Catalanello's false light claim must be dismissed.

### B.   Plaintiff Cannot State a Claim for Publication of Private Facts Where the Facts in Question Are Disclosed In Public Records

Plaintiff's claim for invasion of privacy by publication of private facts is entirely frivolous.  First, as set forth above, the majority of the statements complained of are constitutionally protected <u>opinions</u>; therefore, these statements cannot form the basis of a claim for publication of private <u>facts</u>.  *See Braun v. Flynt*, 726 F.2d 245, 249 (5th Cir.) ("[P]ublications alleged to constitute invasions of privacy merit the same constitutional protections as do publications alleged to be defamatory.").

Second, to the extent that plaintiff's privacy claim is premised on the Article's report of the allegations in the publicly-filed *Pacifico* complaint, his claim fails because "[d]isclosure of

29

the contents of . . . public records does not give rise to a cause of action for invasion of privacy."

*Dzwonar v. McDevitt*, 791 A.2d 1020, 1029 (N.J. Super. Ct. App. Div. 2002).  In order to state a

claim for publication of private facts, it is necessary to show that the matters publicized were

"actually private."  *Romaine*, 537 A.2d at 291.  That Catalanello was a defendant in a publicly

filed employment discrimination lawsuit is simply not a private fact, nor are the allegations of

the complaint in that lawsuit.  Noting that "the interests in  privacy fade when the information

already appears on the public record," the Supreme Court held that "the First and Fourteenth

Amendments command nothing less than that the States may not impose sanctions on the

publication of truthful information contained in official court records open to public inspection."

*Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494-95 (1975).  Where, as here, the facts complained

of are found in public court records, such records "serve to place such facts in the public arena

and thus bar a claim for publication of private facts."  *Romaine*, 537 A.2d at 292.

<u>**CONCLUSION**</u>

For the reasons set forth above, defendant Washington University respectfully requests

that the Court grant its motion to dismiss all claims against Washington University in Counts I-

III of the Complaint with prejudice.

Dated:  New York, New York
        February 25, 2013

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By:   ___/s/_____
        Robert D. Balin
        Laura R. Handman (*pro hac vice*)
        Alison B. Schary (*pro hac vice*)

1633 Broadway – 27th Floor
New York, New York  10019
Telephone:     (212) 489-8230
Facsimile:     (212) 489-8340

*Attorneys for Defendant*
*The Washington University*

31

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on this 25th day of February, 2013, I caused the foregoing Notice of

Motion for Defendant The Washington University's Motion to Dismiss the Complaint,

Memorandum of Law in Support and associated documents, and Proposed Order with the Court

using the CM/ECF system.  All participants in the case are registered CM/ECF users and will be

served by the CM/ECF system.  In addition, a courtesy copy of this filing is being sent by U.S.

mail, postage prepaid, to the Honorable Claire C. Cecchi.


          /s/              
              Robert D. Balin

32